7262

ACKERMAN & REEVES v. ATLANTIC COAST LINE R. R. CO.

1. SECONDARY EVIDENCE—CORPORATIONS—CHARTER.—Under notice to produce the original charter of a corporation, and upon admission of its being in possession of the corporation but not in Court, secondary evidence of the charter may be shown by a witness reading from the record of another case in another Court to which the same corporation was a party a paper put in evidence in that case by the corporation as an agreement of consolidation. That the corporation is in a foreign State does not affect this question.

2. PUNITIVE DAMAGES—ISSUES.—There was evidence here warranting submission to jury of issue of punitive damages for placing and maintaining piling under a bridge across a navigable stream in the current used for floating lumber in rafts in such manner that lumber was sunk.

MR. JUSTICE WOODS *dissents.*

3. APPEAL.—If trial Judge instruct jury as to issues not raised by the pleadings, his attention should be called to it, if it is to be made the ground of an exception.

Before PRINCE, J., Colleton, Fall term, 1908. Affirmed.

Action by Ackerman & Reeves against Atlantic Coast Line Railroad Co. From judgment for plaintiff, defendant appeals on the following exceptions:

1. "Because the presiding Judge erred in admitting in evidence, over the objection of defendant's attorneys, an alleged copy of the certificate of the Secretary of State, printed in the record in the United States Circuit Court of Appeals, *In re R. O. Dunning and Edward Myers* v. *Atlantic Coast Line Railroad Company,* the error assigned being that a certified copy from the office of the Secretary of State was made by statute evidence of said certificate in the absence of the original, and that the alleged copy printed in said record was not proper secondary evidence to go to the jury; and, further, that the certificate of the Secretary of State, of which the matter introduced was said to be a copy, did not constitute the charter of incorporation of the defendant in this case, or of any other corporation, but was only the evidence that the Atlantic Coast Line Railroad Company of Virginia had complied with the provisions of the statute of South Carolina permitting certain corporations to merge and consolidate and do business as domestic corporations within the State.

2. "Because the presiding Judge erred in permitting the witness, W. B. Gruber, to testify, over the objection of defendant's attorneys, as to the nature and contents of the record in the United States Circuit Court of Appeals in the Dunning and Myers cases, the error assigned being that said records were wholly immaterial, irrelevant and incompetent to prove any issue in this case, which was a suit between other parties.

3. "Because the presiding Judge erred in permitting the witness, W. B. Gruber, to read to the jury the said alleged copy of the certificate from the Secretary of State, the error assigned being that there was not sufficient proof that the same was a copy of the certificate and that the said copy was not such as is provided by the statute law of the State.

4. "Because the presiding Judge erred in admitting in evidence, over the objection of defendant's attorneys, the printed copy of the agreement of consolidation contained in

pages 324 and 325 of the Acts of 1903, containing the agreement of the Atlantic Coast Line Railroad Company and the Savannah, Florida and Western Railroad Company, the error assigned being that the statute of the State provided what should be secondary evidence of papers recorded in the Secretary of State's office, and, further, that said agreement did not constitute the charter of the corporation sued, or of any corporation; and, further, that any agreement between the Savannah, Florida and Western Railroad Company and the Atlantic Coast Line Railroad Company was immaterial and irrelevant to any issue presented in this case, and, further, because this action being against the Atlantic Coast Line Railroad Company, a South Carolina corporation, any evidence as to the consolidation or domestication of the Atlantic Coast Line Railroad Company, a Virginia corporation was irrelevant and incompetent.

5. "Because the presiding Judge erred in refusing to charge the jury as requested by defendant's counsel, that there was no evidence to justify punitive damages, the error assigned being that there was no evidence of recklessness, wantonness or wilfulness which would justify the finding of punitive damages.

6. "Because the presiding Judge erred in charging the jury as follows: 'I charge you, gentlemen, that without authority by Act of Congress, and also legislative authority from the Legislature of the State through which the stream flows, no one has the right to obstruct a navigable stream, and the only way that defendants can acquire the right to obstruct a navigable stream is by putting in evidence the special act of Congress and the act of the Legislature of the State of South Carolina, giving such authority, or by proving the continued unhindered maintenance of the obstruction for more than twenty years, which would presume that the authority to make the obstruction had been granted by legislative authority. Twenty years of uninter-

rupted maintenance of obstruction in the bridge across a navigable stream would justify the jury in the presumption that the authority for this obstruction to navigation in a navigable stream had been granted by the legislative authority to the extent that it had been maintained for twenty years; so in this case, if you find in this case that the defendant maintained the bridge over the Edisto river, and if you should further find that the bridge had been there for more than twenty years, I charge you that you may presume that the railroad had the authority for· constructing and maintaining that bridge,' the error assigned being, the issue before the jury was as to the obstruction consisting of piles, etc., having been unlawfully placed in a navigable stream, and not as to the erection and maintenance of a bridge over the stream, and this charge of the Judge was, therefore, calculated to mislead the jury, and put upon the defendant the burden of showing its rights to erect and maintain the bridge, which was not involved in the case.

7. "Because the presiding Judge erred in charging the jury as follows: 'And then in order to justify the obstruction of navigation temporarily for the purpose of temporarily strengthening the bridge must not have been due to negligence on the part of the railroad, because if the necessity to strengthen the bridge arose out of the negligence of the defendant company, charged with keeping the bridge in a proper condition, for the transportation of commerce, I say, if the necessity of strengthening the bridge arose out of negligence on the part of the company, then the company can not justify the interruption of commerce on the navigable stream by saying it was necessary to strengthen the bridge,' the error assigned being that the Judge thus put in the case an element not included in the issue raised by the pleadings, to wit, the question how the bridge got out of repair, there being no allegation in the

complaint of any negligence in permitting the bridge to be
so out of repair.

8. "Because the presiding Judge erred in charging the
jury 'that the duty of the railroad company as a public ser-
vice corporation is to have kept that bridge in repair, that is
the duty it owed the public. It is its bounden duty to do
that if it was necessary for the public's use and benefit.
Now the question is whether it was necessary for the
public's use and benefit to repair the bridge and whether its
being out of repair was due to the negligence of the defend-
ant company; if it was due to the negligence of it, then the
necessity to repair it would not justify them in obstructing
a navigable stream,' the error assigned being that there was
no charge of negligence in failing to keep the bridge in
repair alleged in the complaint, and, therefore, this charge
of the Judge introduced an issue into the case not raised by
the pleadings.

9. "Because the presiding Judge erred in charging the
jury as follows: 'Now, gentlemen, if you find that the com-
pany did obstruct the navigation of that navigable stream
so as to impair the commerce on that stream, then you
would determine whether that was negligently done or wan-
tonly done, you determine whether it was mere negligence
or wantonness or recklessness after notice of the injury
that the people using the river were suffering,' the error
assigned being that the Judge thereby charged with respect
to the facts of the case in that he assumed that 'notice of the
injury that the people using the river were suffering,' had
been given to the defendant, this being one of the disputed
facts in the case."

*Messrs. T. Moultrie Mordecai, W. Huger FitzSimons*
and *Simeon Hyde* for appellant. *Mr. Hyde* cites: *Evi-
dence admitted to show charter incompetent:* Code, 1902,
sec. 2888; 73 S. C., 503; 80 S. C., 355; 166 Fed. R., 850;
64 S. C., 139; 9 Ency., 879; Steph. Dig. Ev., 14. *There*

was no evidence of wantonness or recklessness: 2 Suth.
on Dam., 1093; Mech. on Ag., pars. 723, 741; 69 S. C.,
444; 62 S. C., 270; 64 S. C., 423; 72 S. C., 350; 60
S. C., 67.

*Messrs. Howell & Gruber* and *Padgett & Lemacks,* con-
tra, cite: *Secondary evidence of charter:* 80 S. C., 527.

July 24, 1909.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   This is an action for damages
alleged to have been sustained by the plaintiffs on account
of the destruction of certain rafts of lumber by the defend-
ant, at its bridge across the Edisto river, while said lumber
was being transported down the river.

The complaint alleged in substance that the defendant is
a corporation created by and existing under the laws of
the State of South Carolina, owning and operating a certain
railroad, passing through the county of Colleton, and cross-
ing the Edisto river, a navigable stream; that the defendant
owns and keeps up a bridge, as a part of its roadbed and
track, across the said stream; that the defendant recklessly,
carelessly, wantonly and negligently changed the usual
course and passage under and through the said bridge by
building and maintaining such bridge in an unskillful and
unworkmanlike manner, driving piling down and placing
booms across said river, where the channel was and where
the currents thereof drove the rafts of timber and lumber,
so as to become a menace to the lives and property of the
plaintiffs and others, engaged in the business of transport-
ing lumber down said river; that such booms and piling
obstructed the free and safe navigation of the said stream
by causing rafts of lumber to become fastened against said
booms and piling, and to be overturned, lost and destroyed;
that by reason of such obstruction of the navigation of said
stream the plaintiffs lost twenty thousand feet of lumber
during the month of March, 1905, to their damage seven
hundred and fifty dollars.

The defendant denied each and every allegation of the complaint, and denied specifically that the defendant was created a corporation under and by virtue of the laws of South Carolina.

The jury rendered a verdict in favor of the plaintiffs for $750, and the defendant appealed upon exceptions, which will be set out in the report of the case.

First, second, third and fourth exceptions: These exceptions will be considered together.

The plaintiffs' attorneys served notice upon the defendant's attorneys to produce the original charter, issued by the Secretary of State to the defendant, on the 13th of May, 1902, and in the event of failure to produce the same, that they would offer secondary evidence as to its contents.

The following statement appears in the record: "The defendant's counsel admitted that the charter referred to in the said notice was in the possession of the defendant, but that they had not brought it into Court. They also conceded in the argument that the defendant was incorporated, but maintained that it was a Virginia, and not a South Carolina, corporation."

In the first place, it made no difference whether the defendant was a South Carolina or Virginia corporation, since no question as to the right of removal was involved.

And, in the second place, the question is concluded by the case of *Beaty* v. *Ry.*, 80 S. C., 527, 61 S. E., 1006.

Fifth exception: This exception raises the question whether there was any evidence of punitive damages. There was testimony to the effect that at the point where the defendant's trestle crosses the river the channel ran on the west side of the stream, and prior to October, 1904, there was an opening or span about eighty feet in width, through which rafts of lumber passed; that this channel had remained unobstructed since 1881; that in October, 1904, this opening was closed by

driving down sixteen piles, thus obstructing navigation, and that it so remained until April, 1906; that during the interval between October, 1904, and April, 1906, the only opening for navigation was a span of forty feet in width, on the eastern side of the river, but was entirely out of the channel, and was put in by the railroad company for navigation by steam and sail boats; that in order to transport rafts through the span on the east side of the river it was necessary that there should be a force, some distance up the river, with ropes and a windlass, to catch the rafts as they came down and draw them out of the current to the eastern side of the river; that unless this was done the rafts drifted against the obstruction put into the span on the west side and were destroyed; that prior to March, 1905, the defendant had notice that the obstruction of the large span was becoming a menace to navigation, and that lumber which was coming down was being sunk; that it only took about three weeks to repair the bridge after obtaining the material for the work.

There was likewise testimony in behalf of the defendant tending to explain the delay in repairing the bridge, and showing that numerous rafts passed through the smaller span in safety, and that the current of the river ran through the smaller opening.

In view of these facts the question was properly submitted to the jury.

Sixth, seventh and eighth exceptions: These exceptions cannot be sustained for the reason that the charge was responsive to the issues made by the pleadings; but even if there were no such issues, the attention of his Honor, the presiding Judge, should have been directed to such fact.

Ninth exception: This exception was not argued by the appellant's attorney, and, therefore, will not be considered.

The judgment is affirmed.

MR. JUSTICE HYDRICK *concurring:* The length of time the piles were left in the river by the defendant, after it had knowledge that they were causing the destruction of rafts of lumber, was sufficient to warrant a reasonable inference of indifference on the part of the defendant to the rights of those who navigated the river. A *prima facie* case for punitive damages having been made out, the question was properly submitted to the jury, and its decision is binding upon this Court, which has no jurisdiction to consider the testimony on the part of the defendant tending to explain why the piles were left there so long.

MR. CHIEF JUSTICE JONES *did not sit in this case.*

MR. JUSTICE WOODS *dissenting:* I concur, except as to the question of punitive damages. It is true the obstruction of the defendant railroad company was a menace to navigation, causing loss of timber, and that it so remained from October, 1904, until April, 1906. But there is no evidence that the piles which constituted the obstruction were not necessary to the safety of the bridge. The only evidence that the railroad neglected its duty to remove the piles as soon as possible was the length of time they were allowed to remain as obstructions to navigation. From this delay the inference of negligence and a verdict for actual damages may be sustained. But there was not a particle of evidence that the delay was wanton or wilful. On the contrary, the undisputed evidence offered by defendant was to the effect that, owing to its age and the increase of traffic, the old bridge became unsafe; that to render it safe it was necessary for the railroad company to strengthen it with piles until it could procure and put in a heavy iron bridge; and that the delay in procuring the iron bridge was due to the fact that manufacturers of bridge material could not keep up with the demand.

It was the imperative duty of the railroad company to make the bridge safe to the traveling public. And it seems to me there was a total absence of proof of wilful, wanton or reckless delay in procuring the bridge, which it was necessary to procure, before the piles could be removed with safety to the traveling public.

For these reasons, I can not escape the conviction that there is no basis in the evidence for awarding the plaintiff punitive damages or for punishing the defendant, and the jury should have been so instructed, in accordance with the request of defendant's counsel.